IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 2000 SESSION

**FILED**

**February 29, 2000**

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| DEON PATTON, | ) | |
| | ) | |
| Appellant, | ) | No. E1999-01331-CCA-R3-PC |
| | ) | |
| | ) | Hamblen County |
| v. | ) | |
| | ) | Honorable Ben K. Wexler, Judge |
| | ) | |
| STATE OF TENNESSEE, | ) | (Post-conviction - underlying offenses: possession with intent to sell more than one-half gram of cocaine; delivery of less than one-half gram of cocaine; escape while being held on a felony) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

For the Appellant:

W. Douglas Collins
Post Office Box 1754
Morristown, Tn 37816

For the Appellee:

Paul G. Summers
Attorney General of Tennessee
          and
Elizabeth B. Marney
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243

C. Berkeley Bell, Jr.
District Attorney General
109 S. Main Street, Suite 501
Greeneville, TN 37743
          and
John F. Dugger, Jr.
Assistant District Attorney General
419 Allison Street
Morristown, TN   37814

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner, Deon Patton, appeals as of right from the Hamblen County

Criminal Court's denial of post-conviction relief. Pursuant to guilty pleas, he was

convicted in 1998 of possession with intent to sell more than one-half gram of cocaine, delivery of less than one-half gram of cocaine, and escape while being held on a felony.[1]  He received an effective sentence of ten and one-half years imprisonment. The petitioner contends that he received the ineffective assistance of counsel and that as a result, his guilty pleas to the drug charges were not knowing and voluntary.  We affirm the trial court's denial of post-conviction relief.

The facts underlying the petitioner's convictions are gleaned from the state's offer of proof at the guilty plea hearing.  With respect to the possession conviction, the state's offer showed that Officer Billy Gulley of the Morristown Police Department stopped the petitioner on the suspicion that he was drag racing.  The petitioner consented to Officer Gulley's search of the car, and Officer Gulley discovered crack cocaine in the ashtray.  The petitioner later stated to Agent Dan Cox, "I'm no big dog like you all think I am, I'm just trying to survive.  You've got a job to do, I've got a job to do, and I got caught."  The petitioner made further statements to Agent Cox that if he dropped the charges, the petitioner would provide Agent Cox with the identity of his supplier.  Regarding the delivery conviction, the proof would show that an undercover agent wearing a hidden video camera went to the Ebony Outdoorsman and purchased what was later determined to be crack cocaine from the petitioner.  A video showed the petitioner exchanging the drugs for forty dollars.

At the evidentiary hearing, the petitioner testified that he had graduated from high school but that he could not read or write.  He said that Clifton Barnes represented him on the possession charge and that Greg Eichelman represented him on the delivery charge and at the preliminary hearing on the possession charge.  He testified that although he told his attorneys he wanted to go to trial, they continually pressured him to plead guilty.  He said he believed the attorneys should have filed a motion to contest the stop and search that resulted in the possession conviction.  He said he told his attorneys that Kilya Pyles was a witness to the stop and search and that she was following him in another car when he was stopped.  He said that both he and Ms. Pyles owned the car he was driving and that he told his attorneys Ms. Pyles would

[1]The petitioner does not challenge his plea and conviction for the escape charge.

testify that Officer Gulley never received permission from her or the petitioner to search the car. He said his attorneys never contacted her because they believed she could hurt his case. He said he also believed his attorneys should have subpoenaed "Jeff," who was in the car with Ms. Pyles, but he did not know Jeff's last name. He admitted that immediately before he was stopped, he had been driving parallel to the other car and had sped away at ninety miles per hour. Regarding the delivery charge, the petitioner testified that Mr. Eichelman did not interview any witnesses.

The petitioner admitted that his relationship with his attorneys was contentious at times and that he had tried to fire them. He said he refused to meet with Mr. Barnes several times and had threatened to commit suicide during trial. He said he was unaware that Mr. Barnes had filed a motion for a mental examination to determine if the petitioner was capable of understanding the plea and the consequences of going to trial. He said he was also unaware that his attorneys had filed two motions for discovery, motions to suppress the two statements he gave following the stop and search, and a successful motion to prevent the state from using a prior conviction against the petitioner at trial.

The petitioner testified that he pled guilty because he did not believe his attorneys were ready for trial. He further stated that he pled guilty because he was "probably going to be guilty if I walked in here that day and sat down. I probably would've been guilty then . . . . I'm always guilty in your all's eyes because of my past record[.]" He testified that he lied at the guilty plea hearing when he told the trial court that he understood what he was doing. He said that Mr. Barnes was talking to him when the trial court was explaining the plea agreement and that he did not hear most of what the trial court said. He said he received a Range I sentence and was aware that the state had filed notice to seek a Range II sentence if the case went to trial. He said he knew he was facing a possible sentence of thirty-four years if he went to trial.

Kilya Pyles testified that she and Jeff Ford were following the petitioner when he was stopped. She said she owned the car the petitioner was driving. She said Officer Gulley never asked her or the petitioner for permission to search the car. She said that neither of the petitioner's attorneys ever contacted her but that she was

3

afraid to testify on the petitioner's behalf because she thought she might be charged with an offense. She said she and the petitioner were not on good terms at the time of his guilty plea hearing.

Clifton Barnes testified that he did not contest the stop and search because he had no grounds. He said that Officer Gulley testified at the preliminary hearing that he stopped the petitioner because he saw two cars moving back and forth, then saw one of the cars speed off. Mr. Barnes said that several times the petitioner wanted him to contact Ms. Pyles but then the petitioner would tell him not to contact her. He said he had spoken with Ms. Pyles. He said he believed that she would testify that she consented to the search of the car and that her testimony would hurt the petitioner's case.

Mr. Barnes testified that he filed motions to suppress the petitioner's statements to Agent Cox and filed a successful motion to prevent the state from questioning the petitioner on a previous conviction. He said that at the time of the motions hearing, the petitioner was not speaking to him and would not participate. He said that he became so frustrated with the petitioner's lack of cooperation that he filed a motion for a mental evaluation of the petitioner. He admitted that he spoke with the petitioner five or six times about accepting the state's plea offer, and he stated that he believed it was in the petitioner's best interest to accept it. He said he told the petitioner he would take the case to trial and asked the petitioner for information that would help his defense. He said the petitioner stated, "I'll take the 34 years; it doesn't matter." He said the petitioner did not want to discuss possible defenses.

Mr. Barnes testified that the petitioner's possession case was scheduled for trial on the day the petitioner entered his guilty pleas. He testified that although he had not subpoenaed any witnesses, he was prepared to go to trial. He said the petitioner hesitated at times and was difficult but ultimately agreed to accept the plea offer that morning. He said that during the guilty plea hearing, the trial judge became frustrated with the petitioner and told the petitioner that he was ready to call in the jury and begin the trial but that the petitioner stated he wanted to continue with the guilty plea hearing. Mr. Barnes said the trial court went beyond its normal explanation of the

4

consequences of accepting a guilty plea in order to ensure that the petitioner's pleas were knowing and voluntary. He said he felt the petitioner understood the pleas and the consequences of going to trial.

Greg Eichelman testified that although he thought the stop and search were issues, he did not feel that a motion to suppress would have succeeded. He said the evidence presented at the preliminary hearing fully explained the officer's reason for stopping the petitioner. He recalled that he spoke with Ms. Pyles and that he felt her testimony would not help the petitioner. He testified that he discussed the state's plea offer with the petitioner and suggested the petitioner take it. He said the offer was for a Range I offender, and the petitioner was a Range II offender.

The trial court denied the petition. With respect to the petitioner's contention that his attorneys were ineffective for failing to file a motion to challenge the stop and search, the trial court stated that the attorneys did not render ineffective assistance by not filing a motion that was unsupportable. With respect to the attorneys' failure to subpoena Ms. Pyles, the trial court accredited the attorneys' testimony that they believed Ms. Pyles' testimony would be detrimental to the petitioner's case. The trial court further determined that the petitioner knowingly and voluntarily entered into his plea agreement, stating that at the guilty plea hearing:

> Mr. Patton, more or less indicated that he wanted to stop the guilty plea, wanted to stop it and something about . . . the courts were unfair to him and that he was going to get convicted, anyway. And, anyhow, he was asked again . . . whether or not he wanted to continue with the guilty plea and take the ten and a half years rather than whatever the jury might have found for him. And he said yes, and the guilty plea was then continued.

The trial court further found that the petitioner's complaints at the guilty plea hearing related to his dissatisfaction with the court and his belief that other inmates were getting a "better deal" but that the petitioner ultimately decided to plead guilty. It determined that the petitioner understood his pleas, noting that at the guilty plea hearing, the petitioner specifically stated that his sentence was ten and one-half years at thirty percent.

5

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 464 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

We also note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

The petitioner must show both deficiency and prejudice by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Since the creation of post-

conviction procedures, the findings of the trial court in a post-conviction case have been given the weight of a jury verdict. See Janow v. State, 4 Tenn. Crim. App. 195, 200, 470 S.W.2d 19, 21 (1971). Our long-held standard of review on appeal bound us to the trial court's findings of fact unless we concluded that the evidence preponderated against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). This traditional standard prevented us from reweighing or reevaluating the evidence or substituting our own inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony were resolved by the trial court, not this court. Id. This court has held that it would give due deference to the trial court's findings regarding the ineffective assistance of counsel under the well-settled standard set forth in Henley. Richard C. Taylor v. State, No. 01C01-9707-CC-00384, Williamson County, slip op. at 26 (Tenn. Crim. App. July 21, 1999).

While reaffirming the Henley standard for purely factual issues, our supreme court recently stated that "the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact" requiring a de novo review by this court. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We do not believe that the supreme court intended in one sentence, without further discussion, to overrule sub silentio over thirty years of jurisprudence regarding the standard of review in post-conviction cases. Thus, we believe that the standard of review remains whether the evidence preponderates against the trial court's finding that the petitioner received the ineffective assistance of counsel. In any event, we believe that both standards yield the same result in this case.

The petitioner contends that his attorneys were ineffective for failing to challenge the stop and subsequent search of his vehicle that resulted in the possession charge and were ineffective for failing to speak with and/or subpoena Ms. Pyles. He argues that his attorneys' deficiencies, combined with their pressuring him to plead guilty, resulted in an involuntary guilty plea. The record shows that following Officer Gulley's preliminary hearing testimony on the possession charge, the attorneys determined that a motion to challenge the stop would be frivolous and unsupportable. The petitioner offered no contrary evidence at the evidentiary hearing and, in fact,

7

admitted that he had been driving parallel to Ms. Pyles and had sped away immediately before he was stopped. Regarding their failure to subpoena Ms. Pyles, Mr. Barnes testified that he believed Ms. Pyles would testify that she had consented to the search. Mr. Eichelman testified that he had spoken with Ms. Pyles and had determined that her testimony would not help the petitioner. Ms. Pyles admitted that at the time of the petitioner's trial, when he entered his guilty pleas, she and the petitioner were not on good terms and that she was afraid to testify on his behalf.

Finally, our review of the guilty plea hearing transcript and the evidentiary hearing testimony reveals that the petitioner's guilty pleas were knowing and voluntary. At the guilty plea hearing, the petitioner indicated that it did not matter whether he went to trial or pled guilty because a jury would find him guilty anyway. The trial court twice suspended the guilty plea hearing and offered to bring in the jury and proceed with trial. However, the petitioner ultimately decided that he wanted to plead guilty, and the transcript reveals that the petitioner understood the terms and ramifications of his guilty pleas. The record shows that the petitioner's initial questioning of the guilty pleas was not the result of any perceived deficiency in his attorneys' performance but rather the result of his unfounded belief that the court system was biased against him. It reflects that the petitioner ultimately chose to accept the state's offer of ten and one-half years rather than face the possibility of a thirty-four-year sentence at trial. The petitioner has not shown that he received the ineffective assistance of counsel or that his guilty pleas were anything other than knowing and voluntary.

In consideration of the foregoing and the record as a whole, we affirm the trial court's denial of the post-conviction petition.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
James Curwood Witt, Jr., Judge

_____
Norma McGee Ogle, Judge